IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

In re:                              )    CIVIL 17-00015 LEK-RLP
                                    )
NATURESCAPE HOLDING GROUP           )
INT'L INC.,                         )
                                    )
           [Alleged] Debtor.        )
_____     )
NATURESCAPE HOLDING GROUP           )
INT'L INC.,                         )
                                    )
           Appellant,               )
                                    )
     vs.                            )
                                    )
GEMCAP LENDING I, LLC; KAREN        )
FAZZIO; HAGADONE HAWAII INC.'       )
THOMAS SPRUANCE; MARIO              )
HOOPER; and GEORGE VAN BUREN,       )
                                    )
           Appellees.               )
_____     )
In re:                              )    CIVIL 17-00017 LEK-RLP
                                    )
NATURESCAPE HOLDING GROUP           )
INT'L INC.,                         )
                                    )
           Debtor.                  )
_____     )
LISA J. BATEMAN and BROOKE          )
DECKER,                             )
                                    )
           Appellants,              )
                                    )
     vs.                            )
                                    )
GEMCAP LENDING I, LLC; KAREN        )
FAZZIO; HAGADONE HAWAII INC.;       )
THOMAS SPRUANCE; MARIO              )
HOOPER; and GEORGE BAN BUREN,       )
                                    )
           Appellees.               )
_____     )

## ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDERS

On December 19, 2016, in In re Naturescape Holding
Group International, Inc., Bankruptcy Case No. 16-00982
("Involuntary Proceeding" or "Bankruptcy No. 16-982"), the
bankruptcy court issued the Order Granting Petitioning Creditors'
Motions for (1) Summary Judgment For Relief Under 11 U.S.C. § 303
and (2) Appointment of a Trustee and (3) Denying Naturescape
Holding Group Int'l Inc's Motion for Summary Judgment and for
Dismissal of Petition Pursuant to 11 U.S.C. § 303 ("Summary
Judgment Order"). On December 20, 2016, the bankruptcy court
issued the Order for Relief in an Involuntary Case ("Relief
Order"). [Bankr. No. 16-982, dkt. nos. 149, 150.[1]] Alleged
Debtor/Appellant Naturescape Holding Group International Inc.
("Naturescape") appealed the Summary Judgment Order and the
Relief Order in Naturescape Holding Group International Inc. v.
GemCap Lending 1, LLC, CV 17-00015 LEK-RLP ("CV 17-015"), and
Interested Parties/Appellants Lisa J. Bateman and Brooke Decker
("Decker") appealed the same orders in Bateman, et al. v. GemCap
Lending 1, LLC, CV 17-00017 LEK-RLP ("CV 17-017").[2] [CV 17-015,
Notice of Transfer of Appeal to District Court, filed 1/12/17

---

[1] The Relief Order and the Summary Judgment Order are
attached to Naturescape's Notice of Appeal as Exhibits A and B,
respectively. [CV 17-015, dkt. nos. 1-4, 1-5.]

[2] Lisa Bateman and Decker are Naturescape's former owners
and officers, [CV 17-017, Appellants' Opening Brief at 1,] and
they will be referred to collectively as "the Owners."

(dkt. no. 1); CV 17-017, Notice of Transfer of Appeal to District Court, filed 1/12/17 (dkt. no. 1).]

Naturescape filed its Opening Brief ("Naturescape Brief") on March 14, 2017. [CV 17-015, dkt. no. 8.] On April 13, 2017: Interested Party Elizabeth A. Kane, Trustee of the Estate of Naturescape Holding Group International Inc. ("the Trustee"), filed her brief ("Trustee Brief"); Petitioning Creditor/Appellee GemCap Lending 1, LLC ("GemCap") filed its Answering Brief ("GemCap CV 17-015 Brief"); and Petitioning Creditors/Appellees Karen R. Fazzio ("Fazzio"), Hagadone Hawaii Inc. – doing business as This Week Publications ("Hagadone"), and Thomas Spruance ("Spruance," collectively "Petitioning Creditors") filed an answering brief and joinder in the GemCap CV 17-015 Brief ("Petitioning Creditors CV 17-015 Brief"). [Id., dkt. nos. 15, 16, 17.] On April 27, 2017, Naturescape filed a Notice of No Reply Brief, and Request for Oral Argument. [Id., dkt. no. 19.]

The Owners filed their opening brief ("Owners Brief") on March 20, 2017. [CV 17-017, dkt. no. 8.] On April 19, 2017: GemCap filed its Answering Brief ("GemCap CV 17-017 Brief"); and the Petitioning Creditors filed an answering brief and joinder in the GemCap CV 17-017 Brief ("Petitioning Creditors CV 17-017 Brief"). [Id., dkt. nos. 9, 10.]

The Court finds these matters suitable for disposition
without a hearing pursuant to Rule LR7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawai`i ("Local Rules").  The Summary Judgment Order and the
Relief Order are hereby affirmed, and Naturescape's appeal in
CV 17-015 and the Owners' appeal in CV 17-017 are hereby denied.

## BACKGROUND

On September 16, 2016, Fazzio, Mario Hooper ("Hooper"),
and GemCap filed an Involuntary Petition Against a Non-Individual
against Naturescape, pursuant to Chapter 11 of the Bankruptcy
Code ("Involuntary Petition").  [Bankr. No. 16-982, dkt. no. 1.]
Later that day, they filed an amended version of the Involuntary
Petition ("Amended Involuntary Petition").  [Id., dkt. no. 4.]
The Amended Involuntary Petition also noted a bankruptcy case was
filed on September 16, 2016 as to Debtor Mountain Thunder Coffee
Plantation International Inc. ("Mountain Thunder Inc."), an
affiliate of Naturescape.  [Amended Involuntary Petition at 2.[3]]
According to the Amended Involuntary Petition, Naturescape owed
"at least [$]107,438.75," consisting of: "at least $15,325.00" to
GemCap for an "[u]ndersecured secured claim"; $87,850.00 to
Fazzio for "[n]onpayment for Coffee broker fees"; and $4,263.75

---

[3] Because there are multiple pages in the Amended
Involuntary Petition that have the same page number, all
citations to the Amended Involuntary Petition refer to the page
numbers assigned to the document by the bankruptcy court's
electronic case filing system.

to Hooper for "[n]onpayment for product-coffee cherry." [Id. at 3.] On November 14, 2016, Hagadone filed a joinder in the Amended Involuntary Petition for a $6,707.37 claim, and Spruance filed his joinder on November 18, 2016 for a $940.10 claim. [Bankr. No. 16-982, dkt. nos. 74, 83.]

The related proceeding cited in the Amended Involuntary Petition is In re Mountain Thunder Coffee Plantation International Inc., Bankruptcy Case No. 16-00984 ("Bankruptcy No. 16-984"). The Involuntary Petition Against a Non-Individual ("Mountain Thunder Inc. Involuntary Petition") alleged Mountain Thunder Inc. owed $41,635.17, consisting of: $6,864.97 to Hagadone for an "[n]onpayment for advertising fees"; $1,833.20 to Spruance for "[n]onpayment for product-coffee cherry"; $6,554.60 to Joseph Hing ("Hing") for "[n]onpayment for product-coffee cherry"; and $26,382.80 to Russell Komo ("Komo") for "[n]onpayment for product-coffee cherry." [Bankr. No. 16-984, Mountain Thunder Inc. Involuntary Petition, filed 9/16/16 (dkt. no. 1), at 3-4.[4]] On September 23, 2016, Gutterman Kona Incorporated ("Gutterman") filed a joinder in the Mountain Thunder Inc. Involuntary Petition for a $1,531.27 claim. [Id., dkt. no. 21.] An Order for Relief in an Involuntary Case was entered on October 21, 2016. [Id., dkt. no. 45.]

---

[4] The citations to the Mountain Thunder Inc. Involuntary Petition refer to the page numbers in the bankruptcy court's electronic case filing system.

On October 11, 2016, in the Naturescape Involuntary Proceeding, Fazzio and Hooper filed a Motion for Summary Judgment for Relief Under 11 U.S.C. § 303 ("Fazzio/Hooper Motion"). [Bankr. No. 16-982, dkt. no. 37.] On November 18, 2016, the bankruptcy court issued an order denying the Fazzio/Hooper Motion ("Fazzio/Hooper Summary Judgment Order"). [<u>Id.</u>, dkt. no. 89.]

On November 18, 2016, Naturescape filed a Motion for Summary Judgment and for Dismissal of Petition Pursuant to 11 U.S.C. § 303 ("Naturescape's Motion"). [<u>Id.</u>, dkt. no. 85.] On November 30, 2016, the Petitioning Creditors and Hooper filed a Counter Motion for Summary Judgment for Relief Under to 11 U.S.C. § 303 ("Petitioning Creditors' Motion"). [<u>Id.</u>, dkt. no. 106.] The bankruptcy court held a hearing on Naturescape's Motion and the Petitioning Creditor's Motion on December 14, 2016. [<u>Id.</u>, Minutes (dkt. no. 139).] The Summary Judgment Order is the bankruptcy court's ruling on Naturescape's Motion, the Petitioning Creditors' Motion, and GemCap's "Emergency Motion (A) to Limit Use of Cash Collateral, (B) for Appointment of Interim Trustee, (C) for Immediate Turnover of Property and an

Accounting" ("GemCap's Motion").[5]   In the Summary Judgment Order,
the bankruptcy court found, in pertinent part:

> (d) Petitioning Creditors' Motion for Summary
> Judgment is GRANTED as there is no bona fide
> dispute as to the claims of creditors Mario
> Hooper, Hagadone Hawai`i Inc. dba This Week
> Publications, Thomas Spruance and GemCap Lending
> I, LLC; (e) Naturescape's Motion for Summary
> Judgment is denied; [and] (f) an Order for Relief
> shall be entered . . . .

[Summary Judgment Order at 3.]  The bankruptcy court ruled that
there was a bona fide dispute about Fazzio's claim.  [Bankr.
No. 16-982, Trans. of 12/14/16 motions hearing ("12/14/16 Hrg.
Trans."), filed 1/11/17 (dkt. no. 234), at 18.[6]]

     The bankruptcy court also granted GemCap's Motion as to
the request for the appointment of a Chapter 11 trustee.
[Summary Judgment Order at 3.]  The December 20, 2016 Relief
Order granted Chapter 11 relief.  Also on December 20, the United
States Trustee appointed Elizabeth Kane as the Trustee, subject
to the bankruptcy court's approval, [Bankr. No. 16-982, dkt.

---

     [5] GemCap's Motion was filed on September 16, 2016.  [Bankr.
No. 16-982, dkt. no. 6.]  The bankruptcy court heard argument on
GemCap's Motion on November 28, 2016, and took the matter under
advisement.  [Id., Minutes (dkt. no. 101).]  On November 30,
2016, GemCap filed a Counter-Motion for Summary Judgment for
Relief Under 11 U.S.C. § 303 and Joinder ("GemCap's Counter-
Motion").  [Id., dkt. no. 110.]  The December 14, 2016 minutes,
however, do not reflect that the bankruptcy court heard argument
on GemCap's Counter-Motion, [id., dkt. no. 139,] and GemCap's
Counter-Motion is not addressed in the Summary Judgment Order.

     [6] The 12/14/16 Bankruptcy Transcript is attached to the
Naturescape Brief as Exhibit A.  [CV 17-015, dkt. no. 8-1.]

no. 152,] and the bankruptcy court approved the appointment on
December 21, 2016. [Id., dkt. no. 161.]

On January 10, 2017, Hooper's counsel filed a motion to
withdraw, and the bankruptcy court issued an order granting the
motion on March 15, 2017. [Bankr. No. 16-982, dkt. nos. 226,
356.] Thereafter, the bankruptcy court docket listed Hooper as
proceeding pro se, but he did not submit any further filings
after his counsel's withdrawal. In CV 17-015 and CV 17-017,
counsel for the Petitioning Creditors does not represent Hooper.

In the instant appeals, Naturescape and the Owners
(collectively "Appellants") argue that the bankruptcy court erred
in granting summary judgment and entering the Relief Order
because the Amended Involuntary Petition was not supported by
three petitioning creditors whose claims were not subject to bona
fide disputes.[7] Appellants assert that: Naturescape's liability
to GemCap was disputed and, even if it was liable, the amount of
the liability was disputed; Hagadone's and Spruance's claims were
precluded by the collateral estoppel doctrine; and the bankruptcy
court found that there was a bona fide dispute as to Fazzio's
claim. Appellants concede that Hooper was a qualified
petitioning creditor.

---

[7] Because the Naturescape Brief and the Owners Brief are
substantively identical, this Order considers the arguments in
both appeals collectively.

This Court has stated:

> This court reviews a bankruptcy court's
> findings of fact for clear error and its
> conclusions of law de novo.  <u>See</u> <u>In re Kimura</u>
> <u>(United States v. Battley)</u>, 969 F.2d 806, 810
> (9th Cir. 1992) ("The Court reviews the
> bankruptcy court's findings of fact under the
> clearly erroneous standard and its
> conclusions of law de novo.").  The court
> "must accept the Bankruptcy Court's findings
> of fact, unless the court is left with the
> definite and firm conviction that a mistake
> has been committed.  Mixed questions of law
> and fact are reviewed de novo."  <u>In re JTS</u>
> <u>Corp.</u>, 617 F.3d 1102, 1109 (9th Cir. 2010)
> (quotation marks and citations omitted).

<u>In re Lee</u>, CIVIL NO. 15-00278 SOM/RLP, 2015 WL
7274035, at *1 (D. Hawai`i Nov. 17, 2015).  The
United States Supreme Court has stated:

> [a] finding is 'clearly erroneous' when
> although there is evidence to support it, the
> reviewing court on the entire evidence is
> left with the definite and firm conviction
> that a mistake has been committed.  This
> standard plainly does not entitle a reviewing
> court to reverse the finding of the trier of
> fact simply because it is convinced that it
> would have decided the case differently.  The
> reviewing court oversteps the bounds of its
> duty under Fed. R. Civ. P. 52(a) if it
> undertakes to duplicate the role of the lower
> court.  In applying the clearly erroneous
> standard . . . , [reviewing] courts must
> constantly have in mind that their function
> is not to decided factual issues de novo.  If
> the [lower] court's account of the evidence
> is plausible in light of the record viewed in
> its entirety, the [reviewing court] may not
> reverse it even though convinced that had it
> been sitting as the trier of fact, it would
> have weighed the evidence differently.  Where
> there are two permissible views of the

> evidence, the factfinder's choice between
> them cannot be clearly erroneous.
>
> Anderson v. City of Bessemer, 470 U.S. 564, 573-74
> (1985) (some alterations in Anderson) (citations
> and some internal quotation marks omitted).  The
> standards described in Anderson apply when a
> district court reviews the factual findings of a
> bankruptcy court.  See, e.g., Ingram v. Burchard,
> 482 B.R. 313, 322 (N.D. Cal. 2012); In re Daewoo
> Motor Am., Inc., 471 B.R. 721, 732 (C.D. Cal.
> 2012), aff'd, 554 Fed. Appx. 638 (9th Cir. 2014);
> In re Folsom, Civil No. 10CV2440 L(NLS), 2011 WL
> 3489681, at *1 (S.D. Cal Aug. 8, 2011), aff'd sub
> nom., Folsom v. Davis, 513 Fed. Appx. 651 (9th
> Cir. 2013).

In re Woods, CIVIL 15-00233 LEK-BMK, 2016 WL 8710426, at *4-5 (D.

Hawai`i Jan. 29, 2016) (alterations in Woods).

## DISCUSSION

Insofar as no party appealed either the bankruptcy

court's ruling that Fazzio is not a qualified petitioning

creditor or its ruling that Hooper is one, the issues in these

appeals are: 1) whether the bankruptcy court committed reversible

error by ruling GemCap, Hagadone, and Spruance (collectively

"Disputed Creditors") were qualified petitioning creditors; and

2) if two or more of the Disputed Creditors are qualified

petitioning creditors, whether the total of their claims –

together with Hooper's $4,263.75 claim – met the threshold

amount.  If the bankruptcy court erred as to only one of Disputed

Creditors, the bankruptcy court's orders must be affirmed because

only three qualifying petitioning creditors (including Hooper)

were required.  11 U.S.C. § 303(b) states, in pertinent part:

10

An involuntary case against a person is commenced
by the filing with the bankruptcy court of a
petition under chapter 7 or 11 of this title–

>    (1)  by three or more entities, each of which
>    is either a holder of a claim against such
>    person that is not contingent as to liability
>    or the subject of a **bona fide dispute as to
>    liability or amount**, or an indenture trustee
>    representing such a holder, if such
>    noncontingent, undisputed claims aggregate at
>    least $15,775 more than the value of any lien
>    on property of the debtor securing such
>    claims held by the holders of such claims[.]

(Emphasis added) (footnote omitted).[8]  The amount is "adjusted by

the Judicial Conference of the United States." § 303(b)(1) n.1

(citing "Adjustment of Dollar Amounts notes set out under this

section and 11 U.S.C.A. § 104").  The bankruptcy court stated the

issue in the Involuntary Proceeding was whether all of the

petitioning creditors' claims exceeded an "aggregate amount of

$15,325." [12/14/16 Hrg. Trans. at 20.]  None of the parties in

these appeals contest the bankruptcy court's ruling as to the

threshold amount.

     In an involuntary bankruptcy proceeding, the

petitioning creditors have the burden of proving that there are

no bona fide disputes as to their claims.  <u>In re Vortex Fishing</u>

<u>Sys., Inc.</u>, 277 F.3d 1057, 1064 (9th Cir. 2002).  Whether there

_____

[8] Appellants argue § 303(b)(2) – which only requires one
holder of a claim that is not subject to bona fide dispute – did
not apply because Naturescape had twelve or more creditors.  <u>See,
e.g.</u>, CV 17-015, Opening Brief at 7.  The appellees do not
dispute this.  Further, § 303(b)(3) and (4) are inapplicable
under the facts of the Involuntary Proceeding.

is a bona fide dispute as to a creditor's claim is an issue of
fact, and therefore the clearly erroneous standard of review
applies on appeal.  Id.

    The Bankruptcy Code does not contain a definition of a
"bona fide dispute."  In re Marciano, 708 F.3d 1123, 1126 (9th
Cir. 2013).  The Ninth Circuit has adopted the Seventh Circuit's
"test for disputes regarding liability or amount" of a claim,
which "requires the bankruptcy court to 'determine whether there
is an objective basis for either a factual or a legal dispute as
to the validity of the debt.'"  Vortex Fishing, 277 F.3d at 1064-
65 (quoting In re Busick, 831 F.2d 745, 750 (7th Cir. 1987)).
This "'objective test'" was "first set out in In re Lough, 57
B.R. 993, 996-97 (Bkrtcy. E.D. Mich. 1986)," in which the
bankruptcy court stated: "'[I]f there is either a genuine issue
of material fact that bears upon the debtor's liability, or a
meritorious contention as to the application of law to undisputed
facts, then the petition must be dismissed.'"  Id. at 1064
(alteration in Vortex Fishing) (quoting Lough, 57 B.R. at 996-
97).

        In 2005, Congress amended section 303 by
        adding the phrase "as to liability or amount"
        after the phrase "bona fide dispute."  Therefore,
        the dispute can relate to liability on the claim
        or the amount of the claim, and not just the
        validity of the debt.  This overrules prior
        decisions holding that the dispute about the
        amount of a claim disqualifies the petitioning
        creditor only if the undisputed portion of the
        claim is less than the statutory minimum amount.

<u>In re Honolulu Affordable Hous. Partners, LLC</u>, Case

No.: 15-00146, 2015 WL 2203473, at *2 (Bankr. D. Hawai`i May 7,

2015) (footnotes and citations omitted).

## I. **<u>GemCap's Claim</u>**

According to the Amended Involuntary Petition,

Naturescape owed GemCap at least $15,325.00 on a secured claim

that was under-secured.  [Bankr. No. 16-982, Amended Involuntary

Petition at 3.]  The bankruptcy court noted GemCap's claims arose

from two term loans and a revolving loan.  [12/14/16 Hrg. Trans.

at 7.]  GemCap submitted evidence that Naturescape; Mountain

Thunder Inc.; Trent A. Bateman and Lisa J. Bateman, individually

and as co-trustees of their trusts; and Brooke Decker, their

adult daughter, executed:

> (1) a Secured Term Loan Note in the principal sum
> of $440,000.00 with a first amendment of
> $328,970.08 and a second amendment in the
> principal amount of $244,578.07 ("Term Note I");
> (2) a Secured Revolving Loan Note up to the
> credit-line amount of $1,550,000.00 which amount
> was amended three times up to the principal amount
> of $4,550,000.00 ("Revolver"); and (3) an
> additional Term Loan Note in the principal amount
> of $1,250,000.00 ("Term Note II") to GemCap, as
> lender . . . .

[Bankr. No. 16-982, GemCap's Joinder in Motion for Summary

Judgment for Relief Under 11 U.S.C. § 303, filed, 10/11/16 (dkt.

no. 40), Decl. of David Ellis ("Ellis Decl.") at ¶¶ 3-4.[9]]

---

[9] David Ellis is one of GemCap's co-presidents.  [Bankr.
No. 16-982, Ellis Decl. at ¶ 1.]  Term Note I, the Revolver, and
(continued...)

GemCap submitted evidence that Naturescape could not make its September 2015 payments for Term Note I and Term Note II (collectively "the Term Notes"). [Id. at ¶ 8, Exhs. 12 & 13 (loan ledgers for Term Notes I and II, respectively).] "These missed payments were 'charged' against the Revolver." [Bankr. No. 16-982, Ellis Decl. at ¶ 8, Exh. 14 (loan ledger for the Revolver).] As of October 2, 2015, Naturescape's loan account, as a whole, was over-advanced by $60,884.46. [Id., Ellis Decl. at ¶ 9, Exh. 15 (10/2/15 borrowing base).] Mountain Thunder Inc. and Naturescape, as borrowers; Trent and Lisa Bateman, individually and trustees of their trusts, and Decker, as guarantors (collectively "Batemans"); and GemCap, as lender, entered into a Forbearance Agreement dated November 10, 2015. [Id., Ellis Decl., Exh. 16.] GemCap submitted evidence that Naturescape failed to make the required payments under the Forbearance Agreement. [Id., Ellis Decl. at ¶ 12.]

A.    **State Court Action**

On December 23, 2015, GemCap filed a Complaint in state court against Naturescape, Mountain Thunder Inc., the Batemans, and others ("State Complaint" and "State Court Action"). [Bankr. No. 16-982, Separate & Concise Statement of Material Facts in Supp. of Naturescape's Motion, filed 11/18/16 (dkt. no. 86),

---

[9](...continued)
Term Note II are attached as Exhibits 3, 4, and 5, respectively, to the Ellis Declaration.

Decl. of Trent A. Bateman, Exh. A.]  The State Complaint brought:
a claim seeking to foreclosure against all of the defendants on
the mortgages securing the loans; [id. at ¶¶ 60-63;] a claim
against the Trent and Lisa Bateman to avoid and recover
fraudulent transfers; [id. at ¶¶ 64-68;] breach of contract
claims against Naturescape and Mountain Thunder Inc.; [id. at
¶¶ 69-79;] and a breach of contract claim against the Batemans
and another guarantor, [id. at ¶¶ 80-85].  On February 16, 2016,
the Batemans, Mountain Thunder Inc., and Naturescape filed a
joint answer ("Answer"), with a Counterclaim against GemCap.
[Bankr. No. 16-982, Ellis Decl., Exh. 18.]  The Answer asserted
nineteen affirmative defenses, and the Counterclaim asserted
thirteen counts.

        On March 11, 2016, GemCap filed a Motion for Partial
Summary Judgment and for Interlocutory Decree of Foreclosure
Against All Defendants on Complaint Filed December 23, 2015
("3/11/16 State Motion").  [Id., Exh. 21.]  On June 24, 2016,
GemCap filed a Motion for Summary Judgment on the Counterclaim
and Related Affirmative Defenses in the Answer Filed February 16,
2016 ("6/24/16 State Motion").  [Id., Exh. 23.]  On July 27,
2016, the state court issued an order granting the 3/11/16 State
Motion, but reserving ruling on the foreclosure issue until all
the claims in the Counterclaim were resolved ("7/27/16 State
Order").  [Id., Exh. 22.]  On August 16, 2016, the state court

issued an order taking GemCap's 6/24/16 State Motion under
advisement to allow the Batemans to pursue a loan that could be
used to pay off GemCap and other creditors ("8/16/16 State
Order"). [Id., Exh. 24.] The 8/16/16 State Order states that
rulings would be issued on the 6/24/16 State Motion and the
foreclosure issue, if no refinancing or loan was finalized by
November 14, 2016. [Id. at 5.] According to GemCap, the 8/16/16
State Order reserved ruling on the issue of whether or not
GemCap's claims were secured. [GemCap CV 17-015 Brief at 4.]
However, by the time of the December 14, 2016 bankruptcy court
hearing, the state court had not issued a ruling on the 6/24/16
State Motion.[10]

B.     **Bankruptcy Court's Rulings Regarding GemCap's Claim**

The bankruptcy court noted that the alleged disputes
regarding GemCap related to the Revolver, not the Term Notes, and
therefore there were undisputed claims at least as to the Term

_____

[10] Although not dispositive of the issues before it in the
appeals, this Court notes that, on June 9, 2017, the state court
issued its findings of fact, conclusions of law, and order
granting GemCap's 3/11/16 Motion, limited to the Batemans and
others ("State FOF/COL"). On June 19, 2017, the Batemans moved
for clarification and/or reconsideration of the State FOF/COL,
but the motion was denied on August 17, 2017. Another order
granting summary judgment to GemCap was filed on the same day,
and a Writ of Ejectment was filed on August 30, 2017. As of the
date of this Order, no final judgment has been entered in the
docket sheet for the State Court Action, although the minutes of
the October 2, 2017 trial setting conference indicate that there
is no need for a trial, the state court was ruling in GemCap's
favor as to the remaining claim, and the parties were to submit
proposed findings.

16

Notes. Even the dispute about the Revolver did not rise to the level of a bona fide dispute because GemCap presented a state court order "saying that a certain amount of money was due as of a certain date."[11] [12/14/16 Hrg. Trans. at 7.] Further, in the Forbearance Agreement, Naturescape stipulated that it was in default. [Id. at 8.[12]] The bankruptcy court also noted that the issues of whether there was or was not a default and whether Naturescape's loan was properly accelerated were not relevant to GemCap's petitioning creditor status because there was no dispute as to Naturescape's liability to GemCap and the amount. [Id. at 19.]

Appellants argue that, at a minimum, there was a bona fide dispute about the amount of GemCap's claim in light of the counterclaims in the State Court Action and because there was a

---

[11] The bankruptcy court did not identify the specific state court order it was referring to, but it appears to have been referring to the 7/27/16 State Order, which granted GemCap's 3/11/16 State Motion. [Bankr. No. 16-982, Ellis Decl., Exh. 22.] The 7/27/16 State Order did not refer to a specific dollar amount or date, but it granted the 3/11/16 State Motion, which asserted the total amounts due under the loan agreements and the Forbearance Agreement was $4,265,815.03, as of March 9, 2016, with interest in the amount of $2,112.13 per day until paid. [Id., Exh. 21, Mem. in Supp. of 3/11/16 State Motion at 9.]

[12] The Forbearance Agreement states: "Borrower acknowledges that, as of the date hereof, Borrower continues to be in breach and default of the Specified Events of Default, allowing Lender to Exercise its rights and remedies under the Loan Agreement and the other Loan Documents." [Bankr. No. 16-982, Ellis Decl., Exh. 16 at 1.] "Borrower" refers to Mountain Thunder Inc. and Naturescape, individually and collectively. [Id.]

dispute regarding whether GemCap was entitled to accelerate the full amount due on the loans. GemCap first argues that Appellants' challenge to its qualified petitioning creditor status fails because they only contests one of GemCap's three claims. However, Appellants contend that GemCap wrongfully declared Naturescape in default and accelerated its loan. Appellants argue that, contrary to GemCap's contention, GemCap's loan ledger for the Revolver shows that interest payments on the Term Loans were made from the Revolver account on October 2, 2015, November 1, 2015, and December 1, 2015. Appellants state that, in the State Court Action, they retained an accounting firm, and the firm opined that there was inadequate data to determine whether Naturescape's loan was ever in default. <u>See, e.g.</u>, CV 17-015, Naturescape Br. at 12-13.

Appellants' reliance on the alleged dispute regarding whether or not Naturescape was in default is misplaced. Appellants acknowledges that "GemCap is a hard-money lender to Naturescape," although they contest whether GemCap's loans were secured. <u>See, e.g.</u>, <u>id.</u> at 10. However, there is no evidence in the record contradicting GemCap's evidence that Naturescape entered into the Term Notes, the Revolver, and the Forbearance Agreement. Thus, there is no dispute that Naturescape was obligated to GemCap under the Term Notes and the Revolver.

In order to be a qualified petitioning creditor, GemCap had to be "a holder of a claim . . . that [wa]s not contingent as to liability or the subject of a bona fide dispute as to liability or amount." <u>See</u> § 303(b)(1). The Bankruptcy Code's definition of a "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). GemCap is the holder of a claim for purposes of § 303(b)(1) because it has a right to payment under the Term Notes and the Revolver, and its right to payment is not contingent.

Appellants contend that GemCap's claims are subject to bona fide disputes as to liability and amount because of the State Court Action. GemCap contends that, under the <u>Drexler</u> rule, its claims are not subject to bona fide dispute because of the 7/27/16 State Order. The <u>Drexler</u> rule, which the Ninth Circuit has adopted,

> is that unstayed non-default state judgments on appeal are not subject to bona fide dispute for purposes of § 303(b)(1). <u>In re Drexler</u>, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986). Cases following this approach reason that it would be "contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a 'bona fide dispute.'" <u>In re AMC Investors[, LLC]</u>, 406 B.R. [478,] 484 [(Bankr. D. Del. 2009)] (quoting <u>In re Drexler,</u> 56 B.R. at 967).

<u>Marciano</u>, 708 F.3d at 1126 (footnote and some citations omitted).
However, the 7/27/16 State Order is not a state judgment, nor was
there a judgment in the State Court Action at the time of the
December 14, 2016 bankruptcy court hearing. Thus, the <u>Drexler</u>
rule does not apply to GemCap's claims.[13]

GemCap's claims must be considered under the analysis
set forth in <u>Vortex Fishing</u>, which "dealt with contract claims
not yet reduced to judgment." <u>See</u> <u>id.</u> at 1127 (citing <u>Vortex
Fishing</u>, 277 F.3d at 1062-63). In <u>Vortex Fishing</u>, the Ninth
Circuit stated,

> the mere existence of pending litigation or the
> filing of an answer is insufficient to establish
> the existence of a bona fide dispute. <u>See</u> <u>In re
> Ross</u>, 63 B.R. 951, 960-61 (Bankr. S.D.N.Y. 1986);
> <u>In re Onyx Telecomm., Ltd.</u>, 60 B.R. 492, 497-98
> (Bankr. S.D.N.Y. 1985); <u>In re Gills Creek Parkway
> Assocs.</u>, 194 B.R. 59, 62-63 (Bankr. D.S.C. 1995).
> Additionally,
>
> > **The existence of a counterclaim against a
> > creditor does not automatically render the
> > creditor's claim the subject of a "bona fide
> > dispute."** So long as the petitioning
> > creditor has established that there is no
> > dispute regarding the debtor's liability on
> > the creditor's claim, the creditor has
> > standing under section 303(b) to bring a
> > petition.

---

[13] The bankruptcy court did not apply the <u>Drexler</u> rule; it
merely found the 7/27/16 Order to be persuasive. [12/14/16 Hrg.
Trans. at 7 ("[W]e do have the State Court's decision in an
order, not a final judgment, but an order . . . saying that a
certain amount of money was due as of a certain date and that has
quite a bit of weight in figuring out whether there's a bona fide
dispute.").]

> [In re] Seko [Inv., Inc.], 156 F.3d [1005,] 1008
> [(9th Cir. 1998).[14]] In contrast, the existence
> of affirmative defenses may suggest that a bona
> fide dispute exists. See 2 L. KING, COLLIER ON
> BANKRUPTCY, ¶ 303.03(2)(b)(I), at 303-23 (15th ed.
> rev. 1998); see also Seko Inv., 156 F.3d at 1008
> (stating that § 303(b)(1) is concerned not with
> "who ultimately owes money to whom[;] rather, it
> is concerned with whether the creditor's claim is
> disputed.").

277 F.3d at 1066-67 (some alterations in Vortex Fishing) (some

brackets omitted) (emphasis added). In addition, in light of the

2005 amendments to § 303, the petitioning creditor must also

establish that there is no dispute as to the amount of the

debtor's liability. See Honolulu Affordable Hous. Partners, 2015

WL 2203473, at *2.

At the time of the bankruptcy court's rulings,[15] the

state court had granted summary judgment to GemCap, finding that,

as of March 9, 2016, $4,265,815.03 was due and owing on

Naturescape's loan agreements and the Forbearance Agreement. The

---

[14] The 2005 amendments to § 303 superseded Seko Investment,
to the extent the case "provide[d] that a 'dispute as to the
amount of the claim gives rise to a bona fide dispute only when
(1) it does not arise from a wholly separate transaction, and
(2) "netting out the claims of debtors" could take the
petitioning creditors below the amount threshold of § 303.'" In
re Excavation, Etc., LLC, No. 09-60953-fra7, 2009 WL 1871682, at
*2 (Bankr. D. Or. June 24, 2009) (quoting Seko Inv., 156 F.3d at
1008).

[15] In reviewing a bankruptcy court's ruling that there were
at least three qualified petitioning creditors, a court must
review the evidence available to the bankruptcy court at the time
the bankruptcy court made its ruling. See, e.g., Vortex Fishing,
277 F.3d at 1065.

state court reserved ruling on whether GemCap was entitled to foreclosure, but that is a remedy issue rather than issue of liability or amount. The state court had also dismissed or stricken twelve of the thirteen counterclaim counts and eleven of the nineteen affirmative defenses. Only Counterclaim Count One and the First, Second, Third, Fifth, Seventh, Eleventh, Fifteenth, and Sixteenth Defenses remained. [Bankr. No. 16-982, GemCap's Counter-Motion, Decl. of Kristin L. Holland, Exh. 1 (Order Granting in Part and Denying in Part Pltf./Counterclaim Def. GemCap Lending I, LLC's Motion to Dismiss the Counterclaim and to Strike Certain Affirmative Defenses etc., filed in the State Court Action on 8/22/16).[16]] Counterclaim Count One alleges that GemCap waived its security interests. [Id., Ellis Decl., Exh. 18 at Counterclaim ¶¶ 94-99.] The First Defense is failure to state a claim; the Second Defense is the admission and denial of the paragraphs of the complaint; [id. at Answer ¶¶ 1-6;] the Third Defense is "Violation of the Security First Rule"; [id. at Answer pg. 3;], the Fifth Defense alleges that GemCap did not plead fraud with particularity; [id. at Answer ¶ 9;] the Seventh Defense alleges unclean hands; [id. at Answer ¶ 11;], the Eleventh Defense alleges the jurisdiction and venue were improper; [id. at Answer ¶ 15;], the Fifteenth Defense alleges

---

[16] The state court issued a minute order on May 20, 2016 ruling on the 3/11/16 State Motion. [Bankr. No. 16-982, Ellis Decl., Exh. 20.]

anticipatory repudiation; and the Sixteenth Defense alleges trade defamation, [id. at Answer ¶¶ 21-22].

Appellants argue that GemCap's claim was subject to a bona fide dispute because GemCap's motion for summary judgment on the remaining counterclaim and affirmative defenses was still pending, as was Naturescape's motion for reconsideration of the state court's ruling on the 3/11/16 State Motion. See Bankr. No. 16-982, Ellis Decl., Exh. 23 (6/24/16 State Motion); id., Concise Counterstatement of Material Facts in Opp. to Petitioning Creditors' Counter Motions for Summary Judgment, filed 12/7/16 (dkt. no. 130), Decl. of Trent A. Bateman, Exh. I (motion for reconsideration of ruling on 3/11/16 State Motion, filed on 7/13/16). However, the fact that there was an unresolved counterclaim count did not preclude a finding that GemCap was a qualified petitioning creditor because the state court granted summary judgment to GemCap as to liability and amount. See Vortex Fishing, 277 F.3d at 1066. Similarly, although pending affirmative defenses regarding "who ultimately owes money to whom" and how much can give rise to a bona fide dispute, see Seko, 156 F.3d at 1008; Honolulu Affordable Hous., 2015 WL 2203473, at *2, the state court granted summary judgment on liability and amount in spite of the remaining affirmative defenses. Thus, the state court did not consider the remaining

affirmative defenses to preclude a ruling on liability and amount.

As to the motion for reconsideration, the rationale behind the Drexler rule applies. GemCap obtained an order granting summary judgment in its favor regarding liability and amount in the State Court Action. Although there was a pending motion for reconsideration, Naturescape could not use its bankruptcy proceedings to litigate its attempt to challenge the 7/27/16 State Order. The bankruptcy court was not in a position to ignore the 7/27/16 State Order, absent a stay of the order pending a ruling on the motion for reconsideration. No such stay was entered in the State Court Action.

In light of the record before the bankruptcy court, its finding that there was no bona fide dispute regarding GemCap's claims was not clearly erroneous. Therefore, its conclusion that GemCap was a qualifying petitioning creditor was not reversible error.

## II. **Hagadone's and Spruance's Claims**

Hagadone and Spruance joined in the Amended Involuntary Petition with claims of $6,707.37 and $940.10, respectively. [Bankr. No. 16-982, dkt. nos. 74, 83.] Both Hagadone and Spruance asserted that Naturescape "conducts business under the tradename and dba 'Mountain Thunder Coffee.'" [Id., Decl. of Petitioning Creditor Craig Furuya ("Furuya Naturescape Decl."),

24

filed 11/14/16 (dkt. no. 75), at ¶ 5; Decl. of Petitioning Creditor Thomas Spruance ("Spruance Naturescape Decl."), filed 11/18/16 (dkt. no. 84), at ¶ 3.[17]]

A. **Additional Background Regarding Hagadone**

Furuya states that, in October 2013, Hagadone entered into two Advertising Agreements with Mountain Thunder Coffee to run advertisements in two of its magazines, Pleasant Hawaii Magazine ("Pleasant Hawaii") and This Week Big Island ("This Week"). [Bankr. No. 16-982, Furuya Naturescape Decl. at ¶¶ 3-4.[18]] Mountain Thunder Coffee purchased a quarter-page advertisement to run monthly from January 1, 2014 to December 1, 2014 in Pleasant Hawaii. The price per advertisement, including general excise tax ("GET"), was $402.08. [Id., Furuya Naturescape Decl., Exh. A.] Mountain Thunder Coffee purchased a half-page advertisement to run monthly from December 1, 2013 to November 1, 2014 in This Week. The price per advertisement, including GET, was $718.75. [Id., Exh. B.] Each Advertising

---

[17] Craig Furuya is Hagadone's Vice President. [Bankr. No. 16-982, Furuya Naturescape Decl. at ¶ 2.] Spruance is a coffee and fruit farmer. He has a coffee farm in Honaunau, Hawai`i. [Id., Spruance Naturescape Decl. at ¶ 2.]

[18] Exhibit A to the Furuya Naturescape Declaration is the Advertising Agreement signed on October 8, 2013 by Trent Bateman as manager for Mountain Thunder Coffee, and Diane Rivas, account executive, and Stan Mulkey, publisher, for Hagadone. [Bankr. No. 16-982, Furuya Naturescape Decl., Exh. A.] On the same date, the same parties signed the Advertising Agreement for This Week. [Id., Furuya Naturescape Decl., Exh. B.]

Agreement stated that it was a renewal. [Id., Exh. A at 1, Exh. B at 1.]

According to Furuya, Hagadone "rendered services to [Naturescape] doing business as 'Mountain Thunder Coffee' including advertisements in 'Pleasant Hawaii Magazine' and 'This Week Big Island.'" [Id., Furuya Naturescape Decl. at ¶ 6.] Hagadone submitted an undated example of the advertisement run in each of the two publications. [Id. at ¶ 8 & Exhs. C & D.] Furuya stated that, as of August 29, 2016, there was a total outstanding amount of $6,707.37 due to Hagadone. [Id. at ¶¶ 12-13.] He also stated prior payments for Mountain Thunder Coffee's advertisements were made by Naturescape on checks from Naturescape's bank account. [Id. at ¶ 9.] Hagadone later submitted a series of emails between Trent Bateman and Rivas, which it contended "demonstrate[d] that [Trent] Bateman, on behalf of [Naturescape], agreed and confirmed by verbal agreement or email orders for Hagadone to run advertisements for 3-month or 4-month periods . . . including the period of time between March 1, 2015 and August 31, 2015." [Bankr. No. 16-982, Petitioning Creditors' Separate & Concise Statement of Material Facts in Opp. to Naturescape's Separate & Concise Statement of Material Facts, filed 11/30/16 (dkt. no. 109), Suppl. Decl. of Petitioning Creditor Craig Furuya ("Suppl. Furuya Naturescape Decl.") at ¶¶ 6-8 & Exh. A.] Furuya stated that, "[b]ecause

26

Hagadone had done business with [Naturescape] for two (2) years prior to 2015, it was common for Hagadone to make advertisement agreements by email for either 3-month or 4-month periods." [Id., Suppl. Furuya Naturescape Decl. at ¶ 10.] Furuya states that Hagadone cancelled the Mountain Thunder Coffee advertising "for the period of September to November 2015." [Id. at ¶ 16.]

Naturescape acknowledges that it entered into the Advertising Agreements dated October 8, 2013. Naturescape asserts that the advertising services covered under those agreements were provided and paid for. [CV 17-015, Naturescape Brief at 22-23.] Naturescape emphasizes that the $6,707.37 Hagadone claimed in the Involuntary Proceeding was for advertising Hagadone "purports to have conducted between March 1 and August 15, 2015." [Id. at 23.]

B.  **Additional Background Regarding Spruance**

Spruance stated that "[i]n or about 2012, [he] began to conduct business with Mountain Thunder."[19] [Bankr. No. 16-982, Spruance Naturescape Decl. at ¶ 4.] Relevant to the Involuntary Proceeding, Spruance sold coffee cherry from his farm to "Mountain Thunder" between July 24, 2015 and September 12, 2015. [Id. at ¶ 5.] Spruance submitted receipts from "Mountain Thunder," dated July 24, 2015, July 27, 2015, and September 12,

---

[19] It is unclear from the Spruance Naturescape Declaration whether he did business with Naturescape as Mountain Thunder Coffee or Mountain Thunder Inc.

2015 for $682.50, $492.70, and $658.00, respectively. [Bankr.
No. 16-982, Spruance Naturescape Decl., Exh. A.]  From those
amounts due, "Mountain Thunder" deducted payment for the coffee
pickers, leaving totals for each receipt of $341.25, $246.35, and
$352.50, respectively, for a grand total of $940.10. [Id.,
Spruance Naturescape Decl. at ¶¶ 9-10.]  Spruance states that, as
of August 29, 2016, that total amount was still outstanding.
[Id. at ¶¶ 16-17.]  According to Spruance, payments for "Mountain
Thunder's" prior coffee cherry purchases were made by Naturescape
on checks from Naturescape's bank account.  [Id. at ¶ 11.]

   C.   **Effect of Mountain Thunder Inc. Involuntary Proceeding**

        Appellants argue that Hagadone and Spruance cannot be
qualified petitioning creditors in the Involuntary Proceeding
because they already obtained relief on the same claims in the
Mountain Thunder Inc. Involuntary Proceeding.  In the Mountain
Thunder Inc. Involuntary Proceeding, Hagadone submitted the same
Advertising Agreements submitted in Naturescape's Involuntary
Proceeding.  See Bankr. No. 16-984, Petitioning Creditors Concise
Statement of Facts in Supp. of Motion for Summary Judgment (11
U.S.C. § 303), filed 10/11/16 (dkt. no. 39), Decl. of Petitioning
Creditor Craig Furuya ("Furuya Mountain Thunder Inc. Decl."),
Exhs. A & B.[20]  Hagadone also submitted "invoices sent to

_____

        [20] On October 11, 2016, Hagadone, Spruance, Hing, Komo, and
Gutterman filed a Motion for Summary Judgment for Relief Under 11
                                              (continued...)

[Mountain Thunder Inc.] for the services rendered to [Mountain Thunder Inc.] between March 1, 2015 and August 15, 2015. [Id. at ¶ 8 & Exh. E.] The amount due on these invoices – $6,864.97 – included late fees of 1.5% per month. [Id., Furuya Mountain Thunder Inc. Decl. at ¶¶ 9-11, 13.] The invoices were addressed to either "Mountain Thunder Coffee(BI)" or "Mountain Thunder Coffee(PH)," and "Naturescape Holding Group." [Id., Exh. E.] Spruance stated that "[i]n or about 2012, [he] began to conduct business with Mountain Thunder Coffee Plantation Int'l Inc." [Id., Spruance Mountain Thunder Inc. Decl. at ¶ 3.] He relied upon the same three invoices that he submitted in the Naturescape Involuntary Proceeding, with the same deductions. [Id., Spruance Mountain Thunder Inc. Decl. at ¶¶ 8-9 & Exh. A.]

At the start of the December 14, 2016 hearing in the Naturescape Involuntary Proceeding, the bankruptcy court stated it was inclined to reject Naturescape's argument that the presentation of the same claims in the Mountain Thunder Involuntary Proceeding precluded a finding that Spruance – and by the same analysis, Hagadone – was a qualified petitioning creditor against Naturescape. The bankruptcy court stated:

---

[20](...continued)
U.S.C. § 303. [Bankr. No. 16-984, dkt. no. 38.] On November 15, 2016, the motion was denied as moot because an order for relief had already been entered due to Mountain Thunder Inc.'s failure to file a timely response to the Mountain Thunder Inc. Involuntary Petition. [Id., dkt. no. 62 at 2.]

"There's no reason he couldn't be a creditor of both, particularly where we have these two companies whose affairs are so closely linked where the Debtors have said that Mountain Thunder had, essentially, nothing, and where Naturescape apparently sent out bills using Mountain Thunder Coffee as the bill head." [12/14/16 Hrg. Trans. at 5.] Ultimately, the bankruptcy court adopted its inclination, without make any further findings regarding Spruance and Hagadone. [Id. at 18-20.] During argument on the motions, the following exchange occurred between the bankruptcy court and Naturescape's counsel:

> THE COURT: . . . [S]o you're saying that when I effectively ruled that Mountain Thunder owed these folks money, I was also implicitly ruling that Naturescape didn't owe these folks money. And I'm not sure how that follows – and I'm not sure – in order to have issue preclusion the decision has to be necessary.

> So why would it have been necessary in the Mountain Thunder case for me to decide that Naturescape didn't also owe the same money?

> MR. ARENSMEYER: Because it was a specific claim, for a specific amount of money, based on specific evidence, which this Court determined, was not a bona fide dispute. That specific claim for that amount of money has been adjudicated not in bona fide dispute with Mountain Thunder.

> THE COURT: I still don't see how that precludes the possibility there could also be not a bona fide dispute against Naturescape.

> MR. ARENSMEYER: Well, it can only not be a bona fide dispute against, you know, one debtor. If two debtors owe $900 together, well, how much does each one owe? That's not what they've claimed here.

THE COURT: If they're jointly and severally
liable, they both owe the whole amount.

MR. ARENSMEYER: And they haven't shown
evidence that they're jointly and severally
liable.  There's a dispute there as well.
Certainly a dispute to preclude summary judgment.

[Id. at 12-13.]

Hagadone and Spruance submitted evidence that
Naturescape conducted business under the trade name Mountain
Thunder Coffee and that Naturescape made previous payments to
them on behalf of Mountain Thunder Coffee from Naturescape's bank
account.  [Bankr. No. 16-982, Furuya Naturescape Decl. at ¶¶ 5,
9; id., Spruance Naturescape Decl. at ¶¶ 3, 11.]  In light of
this evidence, and Appellants' failure to identify any
contradictory evidence, the bankruptcy court's finding that there
was sufficient relationship between Mountain Thunder Coffee and
Naturescape as to Hagadone's and Spruance's claims to support
joint and several liability was not clearly erroneous.  The
bankruptcy court did not commit reversible error when it
concluded that the rulings in the Mountain Thunder Inc.
Involuntary Proceeding did not preclude Hagadone's and Spruance's
claims in Naturescape's Involuntary Proceeding.

Appellants do not present any additional challenges to
the bankruptcy court's ruling that Spruance was a qualified
petitioning creditor.  Appellants have failed to establish that
the bankruptcy court erred in concluding that Spruance was a

31

qualifying petitioning creditor.  Because the bankruptcy court

properly concluded that GemCap and Spruance were qualified

petitioning creditors and Appellants do not contest the ruling

that Hooper was a qualified petitioning creditor, there were at

least three qualified petitioning creditors for purposes of

§ 303(b)(1).  Further, the total amounts of their claims were

sufficient to meet the threshold amount.  It is therefore

unnecessary to consider Appellants' final argument regarding

Hagadone's claim.  However, this Court will address it for the

sake of completeness.

### D.  <u>Other Alleged Dispute Regarding Hagadone's Claim</u>

Appellants argue that, even if Hagadone's claim is not

precluded because of its claims in the Mountain Thunder Inc.

Involuntary Proceeding, Hagadone's claim against Naturescape was

subject to a bona fide dispute.  Appellants assert that

Naturescape never purchased advertising from Hagadone for the

period of March 1 to August 15, 2015, and Appellants emphasize

that Hagadone never produced any contract covering that period.

Appellants assert that, even considering the emails between

Trent Bateman and Rivas, there is still a bona fide dispute.  On

May 10, 2015, Trent Bateman sent Rivas an email stating "We are

going to opt out of big island and pleasant Hawaiian [sic]."

[Bankr. No. 16-982, Suppl. Furuya Naturescape Decl., Exh. A at

10.[21]]  On June 24, 2015, Rivas sent Trent Bateman an email
stating: "As I had told you, the soonest we could stop the ads is
for the next printing, which is for Sept-Nov for This Week and
Sept-Dec for Pleasant Hawaii."  [Id. at 11.]  Trent Bateman
previously: authorized the advertisements in the December 2014 to
March 2015 issues of This Week and the January to April 2015
issues of Pleasant Hawaii; [id. at 6 (emails between Trent
Bateman and Rivas dated 11/18/14 and 11/19/14);] confirmed that
he had no revisions for the March, April, and May issues of This
Week, except for the possibility of using new photographs; [id.
at 7 (emails between Trent Bateman and Rivas dated 1/14/15 and
1/16/15);] and authorized advertisements in both publications on
April 21, 2015, [id. at 8 (emails between Trent Bateman and Rivas
dated 4/16/15 and 4/21/15)].  In its inclination – which later
became its ruling – the bankruptcy court stated that, by the time
Trent Bateman attempted to cancel the advertisements,

> they were inside the publication deadline for a
> few issues down the line, and that was an issue
> that came up earlier in that year.
>
> So I don't think you can say sure go ahead
> and run the ads, then get inside the publication
> deadline and say, oh, change my mind, I don't want
> them run.  So I think there's no genuine issue of
> material fact about the fact that there's not a
> bona fide dispute about the Hagadone claim.

_____

[21] Exhibit A does not have page numbers.  All citations to
Exhibit A refer to the page numbers assigned by the bankruptcy
court's electronic case filing system.

[12/14/16 Hrg. Trans. at 6.]

Appellants contend the $6,707.37 Hagadone claimed in the Involuntary Proceeding was for advertising from March 1 to August 15, 2015. See, e.g., CV 17-015, Naturescape Brief at 23. Trent Bateman did not attempt to cancel the advertisements until May 10, 2015, and Hagadone submitted uncontroverted evidence that Trent Bateman gave email authorization on April 21, 2015 for advertisements in both Hagadone publications. Thus, there is no bona fide dispute as to Hagadone's claim for advertising from March 1 until at least May 10, 2015. Even if there is a bona fide dispute as to whether Hagadone should have stopped running Mountain Thunder advertisements immediately upon the May 10, 2015 cancellation notice,[22] that would not preclude Hagadone from being a qualified petitioning creditor as to a claim for the cost of the advertisements run prior to cancellation. See In re Vicor Techs., Inc., No. 12-39329-EPK, 2013 WL 1397460, at *6 (Bankr. S.D. Fla. Apr. 5, 2013) ("When a creditor holds multiple claims, and some but not all of such claims are subject to bona fide dispute, this does not disqualify the creditor entirely. A claim

---

[22] The Advertising Agreements stated: "All cancellation requests must be submitted in writing for the Publisher's review. Neither the advertiser nor its agency of record may cancel after the closing date for space reservations." [Bankr. No. 16-982, Furuya Naturescape Decl., Exh. A at 2.] However, there is no evidence that the terms of the Advertising Agreements applied to the subsequent orders that were placed without an advertising agreement.

of such creditor not subject to bona fide dispute may still be counted for purposes of § 303(b).").  Because Hagadone's claim for the costs of advertisements up to May 10, 2015 was not subject to a bona fide dispute, the bankruptcy court did not err in concluding that Hagadone was a qualified petitioning creditor.

III. **Summary**

The bankruptcy court did not err when it concluded that GemCap, Hagadone, and Spruance were qualified petitioning creditors.  Further, Appellants do not challenge the bankruptcy court's ruling that Hooper was a qualified petitioning creditor. Thus, there were at least three qualified petitioning creditors for purposes of § 303(b)(1), and the total of their claims exceeded the required aggregate amount.  This Court therefore rejects Appellants' argument that the bankruptcy court lacked jurisdiction to issue the Summary Judgment Order because the Involuntary Petition was not supported by the claims of at least three qualified petitioning creditors.  Naturescape's appeal and the Owners' appeal are therefore denied, and the bankruptcy court's Summary Judgment Order and Relief Order are affirmed.

## CONCLUSION

On the basis of the foregoing, the bankruptcy court's Order Granting Petitioning Creditors' Motions for (1) Summary Judgment For Relief Under 11 U.S.C. § 303 and (2) Appointment of a Trustee and (3) Denying Naturescape Holding Group Int'l Inc's

Motion for Summary Judgment and for Dismissal of Petition
Pursuant to 11 U.S.C. § 303, issued on December 19, 2016, and its
Order for Relief in an Involuntary Case, issued on December 20,
2016, are HEREBY AFFIRMED.  Alleged Debtor/Appellant Naturescape
Holding Group International Inc.'s appeal in CV 17-015 and
Interested Parties/Appellants Lisa J. Bateman and Brooke Decker's
appeal in CV 17-017 are DENIED.

   The Clerk's Office is DIRECTED to enter final judgment
in CV 17-015 and CV 17-017 and to close each case on **February 21,
2018**, unless a motion for reconsideration of this Order is filed
by **February 16, 2018**.

   IT IS SO ORDERED.

   DATED AT HONOLULU, HAWAII, January 31, 2018.



      /s/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States District Judge


**NATURESCAPE HOLDING GROUP INT'L INC. VS. GEMCAP LENDING I LLC, ET
AL; CV 17-00015 LEK-RLP; BATEMAN, ET AL. VS. GEMCAP LENDING I.
LLC, ET AL; CV 17-00017 LEK-RLP; ORDER AFFIRMING THE BANKRUPTCY
COURT'S ORDERS**